FILED
2022 Feb-10  AM 08:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KRISTINA WILLIAMS, individually and on behalf of similarly situated persons, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| AMERASSIST A/R SOLUTIONS, INC., | ) ) | CLASS ACTION **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff KRISTINA WILLIAMS brings this action against Defendant AMERASSIST A/R SOLUTIONS, INC. ("AMERASSIST"), both individually and on behalf of similarly situated individuals ("Class Members"), and alleges:

## I.    INTRODUCTION

1.    This is a putative class action to remedy Defendant AMERASSIST's scheme of routinely and knowingly acquiring false debts from a non-party, SmileDirectClub, and then attempting to collect on those false debts in violation of federal law.

2.    As a debt collector, Defendant AMERASSIST also routinely attempts to collect on these false debts using unlawful methods, including the use of an "auto-dialer" to make "robo-calls" to the supposed debtors, including Plaintiff. When these attempts are unsuccessful, AMERASSIST further violates federal law by routinely

1

making false statements regarding these false debts to credit reporting agencies, further harming the victims of these fraudulent activities by lowering their creditworthiness—all premised on a debt that never existed in the first place.

3.    AMERASSIST'S actions violate the Fair Dept Collection Practices Act ("FDCPA") under 15 U.S.C. §§ 1692 *et seq*., the Telephone Consumer Protection Act ("TCPA") under 47 U.S.C. §§ 227 *et seq*., and the Fair Credit Reporting Act under 15 U.S.C. §§ 1681.

## II.    PARTIES, VENUE AND JURISDICTION

4.    Plaintiff KRISTINA WILLIAMS ("WILLIAMS") is an adult citizen of the State of Alabama and a resident of Jefferson County, Alabama. By filing this action, Plaintiff avails herself of the jurisdiction and venue of this Court.

5.    Defendant    AMERASSIST    A/R    SOLUTIONS,    INC. ("AMERASSIST") is a Nevada corporation with its principal place of business located at 1105 Schrock Road, Suite 502, Columbus, Ohio 43229. Defendant regularly collects defaulted debts owed to others from consumers located across the country, including within the State of Alabama.

6.    This Court has federal question jurisdiction under 28 U.S.C. § 1331.

7.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to WILLIAMS' claims occurred within this Judicial District.

### III.   FACTUAL ALLEGATIONS

8.     In January of 2020, WILLIAMS made an appointment to receive a free 3D imaging and consultation at a SmileDirectClub ("Smile Direct") Smile Shop located at 710 Inverness Corners in Hoover, Alabama.

9.     SmileDirectClub[1] is a "teledentistry" company that produces 3D-printed clear teeth aligners. SmileDirectClub is a competitor of both traditional orthodontics and other clear alignment companies like Invisalign.

10.     WILLIAMS went to her Smile Direct initial consultation appointment on January 30, 2020. At multiple times during the appointment, Smile Direct staff confirmed to WILLIAMS that the imaging necessary to evaluate her candidacy for aligners did not require her to purchase aligners and that she was not otherwise agreeing or obligated to purchase them.

11.     At the conclusion of her appointment, Smile Direct staff presented WILLIAMS with paperwork containing proposed payment plans and prices for

---

[1] SmileDirectClub's extensive use of forced arbitration agreements and non-disclosure agreements has worked to limit information about customers' dissatisfaction with its products, including medical concerns. These binding electronic agreements are presented to Smile Direct's customers at the beginning of their first consultation, and they have been very effective in helping Smile Direct avoid litigation over its business practices in courts across the country. *See, e.g.*, Erin Griffith and Peter Eavis, *This Company Says It Will Fix Your Smile. It May Shush You if It Doesn't*., N.Y. TIMES, Jan. 21, 2020. ("In September, some customers filed a class-action lawsuit against the company accusing it of false advertising and violating Food and Drug Administration regulations. All but two plaintiffs later withdrew from the suit because SmileDirectClub's consent form required them to resolve disputes in arbitration."). *Available at*: https://www.nytimes.com/2020/01/21/technology/smiledirectclub-smile-nda.html.

aligners. Clarifying that she had not yet decided to purchase aligners at all, WILLIAMS also asked if signing the paperwork obligated her to do so. Staff answered "no," and further explained the proposed prices were non-final because a dentist must review the imaging and approve plans for individual patients that vary in price. So too for WILLIAMS, according to the representations made by the Smile Direct staff. WILLIAMS was also told she would receive several proposed treatment plans to choose from should she decide to purchase aligners.

12.     All paperwork signed by WILLIAMS confirmed the same: any contract for purchase of aligners was contingent on her subsequent review and acceptance of the final proposal for her healthcare plan. WILLIAMS never received any such proposal, nor did she ever approve it.

13.     To date, WILLIAMS has never purchased, contracted for, or received any Smile Direct aligners.

14.     WILLIAMS never received a proposal or otherwise had a choice in whether to purchase Smile Direct's services. Instead, the very next day after her appointment, WILLIAMS received an email from Smile Direct that her aligners were being made and would ship in five to six weeks. She was billed $250 that day. WILLIAMS emailed Healthcare Finance Direct ("Healthcare Finance"), the payment processor for Smile Direct, and notified them that she had not agreed to a Smile Direct treatment plan and that she had not given Smile Direct permission to

4

charge her card $250. In her email, WILLIAMS asked Healthcare Finance to cancel any alleged contracts between her and Smile Direct. WILLIAMS also called Smile Direct, and after expressing her concerns to the Smile Direct representative to no avail, she asked to speak with a supervisor. WILLIAMS was directed to call back on Monday, February 3, 2020.

15.     On February 9, 2020, WILLIAMS received an automated text message welcoming her to Healthcare Finance with a link to view her account. That same day, WILLIAMS emailed Healthcare Finance that she had attempted to contact Smile Direct by phone and email and had not received a response.

16.     On or about February 9, 2020, WILLIAMS put Fidelity, her credit card company, on notice that she did not order nor agree to order any aligners from Smile Direct.

17.     On February 12, 2020, WILLIAMS received a follow-up email from Healthcare Finance claiming that her Smile Direct account was still active, and therefore it could not suspend payments.

18.     On March 18, 2020, WILLIAMS received an email from Fidelity regarding the $250 credit card dispute she opened against Smile Direct. Smile Direct had provided a rebuttal packet to Fidelity regarding the dispute, and falsely represented that she had agreed to purchase aligners when in fact she had not.

5

19.     On April 13, 2020, Fidelity found in WILLIAM'S favor and granted her $250 dispute with Smile Direct despite Smile Direct's false and fraudulent representations to her bank.

20.     On April 26, 2020, WILLIAMS emailed Healthcare Finance and notified them that she was getting emails alleging that her Smile Direct account was overdue. She again notified Healthcare Finance that she had not agreed to an account with Smile Direct and did not owe them anything. In her email, WILLIAMS also stated that Fidelity had blocked all charges from Healthcare Direct as to not allow any additional unauthorized charges.

21.     On April 29, 2020, WILLIAMS received a response from Healthcare Finance that they still had not received the necessary cancellation documents for her alleged Smile Direct account. Healthcare Finance directed WILLIAMS to contact Smile Direct and confirm the steps for cancellation. That same day, WILLIAMS emailed Healthcare Finance that she had attempted to contact Smile Direct multiple times by phone and email and had not been successful.

22.     WILLIAMS again emailed Healthcare Finance direct about the unauthorized Smile Direct charges on June 29, 2020. WILLIAMS offered to send Healthcare Finance copies of her disputes with Fidelity and notified them that she spoke with a Smile Direct service representative but that he refused to put her in touch with a supervisor or manager.

23.     On June 30, 2020, Healthcare Finance charged WILLIAMS $69.10. WILLIAMS immediately disputed this charge with Fidelity. On September 14, 2020, Fidelity again ruled in WILLIAMS' favor.

24.     On or about September 22, 2020, Healthcare Finance sent WILLIAMS' alleged debt to AMERASSIST, a third-party debt collection agency.

25.     On February 19, 2021, WILLIAMS filed a police report with the Odenville Police Department. A redacted copy of that report is attached as Exhibit "A."

26.     In February 2021, WILLIAMS accessed her Experian credit report and found that AMERASSIST listed the subject Smile Direct debt on her credit file. WILLIAMS had not received notice from AMERASSIST regarding the subject debt prior to AMERASSIST notifying the credit card agencies of the purported delinquent account.

27.     Accordingly, September 22, 2020, WILLIAMS initiated a dispute with Experian requesting that Experian correct the inaccurately reported Smile Direct debt.

28.     On March 18, 2021, Experian forwarded WILLIAMS' dispute to AMERASSIST, notifying AMERASSIST that WILLIAMS was disputing the information it had furnished about her inaccurate Smile Direct account balance. On March 18, 2021, Experian notified WILLIAMS that AMERASSIST had

7

investigated WILLIAMS' dispute and determined that the AMERASSIST debt was correct.

29.     Experian ultimately denied WILLIAMS' dispute based on the false and fraudulent representations made by Defendant AMERASSIST to Experian.

30.     AMERASSIST inaccurately reported the subject false debt to all three credit reporting agencies: Experian Information Solutions, Inc. ("Experian"), Trans Union, LLC ("Trans Union"), and Equifax Information Services, LLC ("Equifax").

31.     On March 22, 2021, WILLIAMS emailed a copy of the police report to AMERASSIST. On April 2, 2021, AMERASSIST responded to WILLIAMS' email with a website link back to Smile Direct's cancellation policy.

32.     Between June 30, 2020 and October 29, 2021, AMERASSIST contacted or attempted to contact WILLIAMS on her cellular telephone number ending in -9119, in an effort to collect the alleged Smile Direct debt. AMERASSIST called from multiple different phone numbers. When WILLIAMS answered AMERASSIST'S calls, a pre-recorded message would play and a hold would take place until WILLIAMS was connected to an operator. AMERASSIST called WILLIAMS' cellular telephone at least four times using this method.

33.     At least one of these calls was placed by AMERASSIST within the past year, in October of 2021. Upon information or belief, the factual circumstances of the call indicates that AMERASSIST unlawfully placed these calls using an

8

"automatic telephone dialing system"—a machine that can dial phone numbers automatically as defined by 47 U.S.C. § 277(b)(1)(A). These calls were also made without "the prior express consent" of WILLIAMS. *Id.* at § 277(b)(1)(B).

34.     To this day, Plaintiff has not purchased or received the Smile Direct aligners, but she continues to have this false debt recorded on her credit reports.

35.     AMERASSIST'S inaccurate reporting of the subject debt has had a significant adverse impact on WILLIAMS' credit rating and creditworthiness because it misleads creditors into believing that WILLIAMS has outstanding accounts that remain unpaid and are acknowledged by WILLIAMS.

36.     As a result of AMERASSIST'S conduct, WILLIAMS has suffered various types of damages as set forth herein, including specifically, the inability to purchase a new vehicle in the fall of 2020 and experiencing a higher mortgage interest rate when trying to purchase a new home in January 2022.

## IV.   CLASS ALLEGATIONS

37.     WILLIAMS, on behalf of herself and all other similarly situated, re-alleges paragraphs 1 through 36.

38.     WILLIAMS brings this action as a putative class action against AMERASSIST pursuant to Rule 23 of the Federal Rules of Civil Procedure.

39.     The proposed "Debt Collection Class" is defined as:

All individuals in the United States from whom AMERASSIST attempted to collect an alleged delinquent consumer debt it

> accepted from SmileDirectClub that was not actually owed, from one year before the date of this complaint to the present.

40.     WILLIAMS also brings this action on behalf of herself and all members

of the following proposed "Credit Reporting Class":

> All individuals in the United States who had an alleged delinquent consumer debt AMERASSIST accepted from SmileDirectClub, where the individual disputed the account at any time two years prior to the filing of this Complaint, and where AMERASSIST continued to report or failed to withdraw a balance owed on the individual's credit report.

41.     WILLIAMS also brings this action on behalf of herself and all members

of the following proposed "TCPA Class":

> All individuals in the United State who were called by AMERASSIST, without prior express consent, on their cellular telephone service through the use of an autodialer or artificial/prerecorded voice, at any time four years prior to the filing of this complaint.

42.     WILLIAMS seeks to recover damages on a class wide basis for herself

and Class Members as set forth below.

43.     **Numerosity.** Class Members are so numerous that joinder of all

members of each class is impracticable. WILLIAMS is unable to state the exact

number of Class Members because that information is solely in AMERASSIST'S

possession. Upon information and belief, the putative Class exceeds hundreds if not

thousands of nationwide consumers.

44.    **Common Questions of Fact and Law.** Questions of fact and law that

are common to each Class regarding AMERASSIST'S uniform illegal conduct

predominate over any questions affecting only individual members of each class.

For example, these common questions include, but are not limited to:

- Whether AMERASSIST acquired debts from SmileDirectClub that were not actually owed;

- Whether AMERASSIST's uniform methods of collecting on false debts violated the FDCPA;

- Whether AMERASSIST violated the FDCPA by using unfair or unconscionable means to collect, or attempt to collect, the false debts at issue;

- Whether AMERASSIST violated the FDCPA by failing to provide written notice;

- Whether AMERASSIST violated the TCPA by using an autodialer to place its calls to consumers seeking to solicit its services;

- Whether AMERASSIST violated the FCRA by furnishing inaccurate information to credit reporting agencies;

- Whether WILLIAMS and the Class Members are entitled to actual damages;

- Whether WILLIAMS and the Class Members are entitled to treble damages; and

- Whether WILLIAMS and the Class Members are entitled to injunctive relief.

45.    **Typicality.** WILLIAMS' claims are typical of each Class and the class

action method is appropriate for the fair and adequate prosecution of this action. This

case arises from the uniform conduct of AMERASSIST and is based on

AMERASSIST'S violations of federal statutes. The conduct and circumstances of

individual class members is largely irrelevant. Because these claims arise from uniformly unlawful conduct, WILLIAMS' claims are typical of each class.

46.    **Adequacy.** WILLIAMS is an adequate representative of each Class because her interests do not conflict with the interests of each Class—they all seek redress for the same unlawful conduct. Further, WILLIAMS retained Counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of each Class will be fairly and adequately prosecute this action vigorously. The interests of each Class will be fairly and adequately protected by WILLIAMS and her counsel. WILLIAMS' claims, like those of each class, are antagonistic to AMERASSIST.

47.    **Predominance.** Common questions of fact and law predominate over any questions affecting individual Class Members.

48.    **Superiority.** A class action is superior to other available means of fair and efficient adjudication. The injury suffered by each individual is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by AMERASSIST'S conduct. It would be impracticable for each Class Member to seek redress individually for the wrongful conduct alleged herein because the cost of such individual litigation would be cost prohibitive. Moreover, even if the Class Members could afford such individual litigation, the court system could not. Individualized litigation increases the delay

and expenses to all parties, and to the court system, by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## V.     CAUSES OF ACTION

### COUNT I
### Violations of the Fair Debt Collection Practices Act
### (15 U.S.C. § 1692)

49.     WILLIAMS, on behalf of herself and all others similarly situated, re-alleges paragraphs 1 through 48.

50.     WILLIAMS is a "consumer" as defined by 15 U.S.C. § 1692a(3).

51.     AMERASSIST is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because its primary business is the collection of delinquent debts and it regularly collects debts and uses the telephones to collect delinquent accounts allegedly owed to a third party.

52.     Additionally, AMERASSIST is a "debt collector" because it acquired the rights to WILLIAMS' alleged subject debt after it was purportedly in default. 15 U.S.C. § 1692a(6).

53.     The alleged subject debt which AMERASSIST is attempting to collect upon is a "debt" as defined by 15 U.S.C. § 1692a(5) as it arises out of a transaction

due or asserted to be owed or due to another for personal, family, or household purposes.

54.     AMERASSIST used the phone and e-mail to attempt to collect the alleged subject debt and, as such, engaged in "communications" as defined by 15 U.S.C. § 1692a(2).

55.     AMERASSIST'S communications to WILLIAMS were made in connection with the alleged subject debt.

56.     Each of AMERASSIST's attempts to collect on the false debt violated the FDCPA.

### a.     Violations of § 1692e of the FDCPA – False, Deceptive or Misleading Collection Actions

57.     Section 1692e of the FDCPA prohibits debt collectors from using any "false, deceptive, or misleading representation or means in connection with the collection of any debt" including, but not limited to, "communicating or threatening to communicate to any person credit information which is known or should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

58.     AMERASSIST, by continuing to report the debt to a credit reporting agency, when it knew the debt was disputed by WILLIAMS, and by failing to report that the debt was disputed, used false, deceptive or misleading means to collect, or attempt to collect debts, in violation of §1692(e)(8) of the FDCPA.

14

59. As a result of AMERASSIST'S violations of section 1692e of the FDCPA, WILLIAMS has been injured and is entitled to damages.

**b.** **Violations of § 1692f - Unfair or Unconscionable Collection Actions**

60. Section 1692f of the FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect a debt." 15 U.S.C. §1692f.

61. AMERASSIST, by continuing to report the debt to a credit reporting agency, when it knew the debt was disputed by WILLIAMS, and by failing to report that the debt was disputed, used unfair or unconscionable means to collect, or attempt to collect, debts, in violation of §1692f of the FDCPA.

62. As a result of AMERASSIST'S violations of section 1692f of the FDCPA, WILLIAMS has been injured and is entitled to damages.

**c.** **Violations of § 1692g – Lack of Written Notice**

63. Section 1692g of the FDCPA requires a debt collector, within five days, to "send the consumer a written notice containing":

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within 30 days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of

the debt or a copy of the judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within he thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." U.S.C. § 1692g.

64.     AMERASSIST, being a "debt collector" as defined by the FDCPA, failed to provide WILLIAMS with proper written notice as required by §1692g.

65.     As a result of AMERASSIST'S violations of the section 1692g of the FDCPA, WILLIAMS has been injured and is entitled to damages.

66.     AMERASSIST'S violation of the FDCPA renders it liable for statutory damages of $1,000 as provided under 15 U.S.C. § 1692k(a)(2)(A); actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1692k(a)(1); and costs and reasonable attorneys' fees as provided under 15 U.S.C. § 1692k(a)(3).

67.     Additionally, as a result of AMERASSIST'S violations of the FDCPA, WILLIAMS is entitled to injunctive relief, enjoining AMERASSIST from further contacting WILLIAMS seeking payment of the subject debt, and from further credit reporting of the subject debt.

## COUNT II
### Telephone Consumer Protection Act
### (47 U.S.C. § 227)

68.     WILLIAMS, on behalf of herself and all others similar situated, re-alleges paragraphs 1 through 68.

69.     According to the TCPA, "it shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States (A) to make any call (other than a call made for emergency purposes or made with the prior consent of the called party) using any automatic telephone dialing system or an artificial or pre-recorded voice --- (iii) to any …. Cellular telephone service, … unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(A)(iii).

70.     Upon information and belief, AMERASSIST used an "automatic telephone dialing system" ("ATDS" or "autodialer") as defined by 47 U.S.C. § 227(a)(1) to place its calls to WILLIAMS seeking to solicit its services.

71.     AMERASSIST'S CALLS were not for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A).

72.     During all relevant times, AMERASSIST did not possess WILLIAMS' "prior express consent" to receive calls using an autodialer and artificial/prerecorded voice on her cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).

73.     Each of the aforementioned calls made by AMERASSIST constitute a negligent or intentional violation of the TCPA, including each of the aforementioned provisions of 47 U.S.C. § 227, et seq.

74.     As a result of AMERASSIST'S violations of the TCPA, WILLIAMS is entitled to an award of $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

75.     As a result of AMERASSIST'S knowing and/or willful violations of the TCPA, WILLIAMS is entitled to an award of treble damages in an amount of up to $1,500.00 for each and every violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C).

76.     Additionally, as a result of AMERASSIST'S violations of the TCPA, WILLIAMS is entitled to injunctive relief as provided under 47 U.S.C. § 227(b)(3)(A) and 47 U.S.C. § 227(c)(5)(A), enjoining AMERASSIST from further contacting WILLIAMS seeking payment of the subject debt, and from further credit reporting of the subject debt.

## COUNT III
## Fair Credit Reporting Act
## (15 U.S.C. § 1681)

77.     WILLIAMS, on behalf of herself and all others similarly situated, re-alleges paragraphs 1 through 76.

78.     AMERASSIST is also a "furnisher" as defined in 15 U.S.C. § 1681s-2. Upon information and belief, AMERASSIST is in the business of furnishing credit information to the credit reporting agencies.

79.     The FCRA requires furnishers of information like AMERASSIST to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, it must report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

80.     AMERASSIST knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA and promulgated by the Federal Trade Commission. Despite knowing these obligations, AMERASSIST acted consciously in breaching its known duties and deprived WILLIAMS of her rights under the FCRA.

81.     AMERASSIST verified its inaccurate reporting in response to WILLIAMS' dispute, despite possessing actual knowledge that the information WILLIAMS disputed was inaccurate or being in possession of information from which AMERASSIST could readily discern that the information WILLIAMS disputed was inaccurate.

82.     AMERASSIST continues to furnish inaccurate information about WILLIAMS to Experian, Equifax, and Trans Union.

83.     The inaccurate charges on the credit reporting agencies credit reports adversely affects WILLIAMS' credit standing.

84.     On at least one occasion within the past two years, AMERASSIST violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate WILLIAMS' disputes to Experian.

85.     AMERASSIST further violated sections 15 §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance with 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

- Willfully and negligently failing to conduct an investigation of WILLIAMS' dispute possessing knowledge, information, and records to substantiate WILLIAMS' dispute;
- Willfully and negligently failing to review all relevant information concerning WILLIAMS' dispute;
- Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;
- Willfully and negligently failing to report to Experian that WILLIAMS' disputed debt is indeed inaccurate;
- Willfully and negligently failing to properly participate, investigate, and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by WILLIAMS;
- Willfully and negligently continuing to furnish and disseminate inaccurate credit, account, and other information concerning WILLIAMS to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and
- Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

86.    AMERASSIST unreasonably refused to take corrective measures required by the FCRA to correct and/or update WILLIAMS' consumer information furnished to the national consumer reporting agencies.

87.    As a result of AMERASSIST'S violations of the FCRA, WILLIAMS has been damaged and is entitled to damages in accordance with the FCRA.

88.    As a result of each and every negligent noncompliance of the FCRA, WILLIAMS is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681o(a)(2), from AMERASSIST.

89.    As a result of each and every willful violation of the FCRA, WILLIAMS is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from AMERASSIST.

## VI.    PRAYER FOR RELIEF

WHEREFORE, WILLIAMS individually, and on behalf of the class, pray that this Honorable Court enter an Order and Judgment:

a.    Certifying this action as a class action as provided by Fed. R. Civ. P. 23;

b. Finding AMERASSIST violated the FDCPA and awarding WILLIAMS and Class Members actual damages pursuant to 15 U.S.C. § 1692k(a)(1), statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A), costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3), and injunctive relief prohibiting such AMERASSIST from further contacting WILLIAMS seeking payment of the subject debt, and from further credit reporting of the subject debt;

c. Finding AMERASSIST violated the TCPA and awarding WILLIAMS and Class Members statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B), treble damages pursuant to 47 U.S.C. § 227(b)(3)(C), and injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A) and 47 U.S.C. § 227(c)(5)(A);

d. Finding AMERASSIST violated the FCRA and awarding WILLIAMS and Class Members actual damages pursuant to 15 U.S.C. § 1681o(a)(1), punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681o(a)(2); and

e. Awarding such other and further relief as the Court may deem just and proper.

## VII.   JURY DEMAND

WILLIAMS demands a trial by struck jury on all issues so triable.

Respectfully submitted,

Date: February 9, 2022

*/s Adam W. Pittman*
Adam W. Pittman
    (ASB-0146-A33P)
Douglas A. Dellaccio, Jr.
    (ASB-4578-L75D)
Taylor A. Pruett
    (ASB-9085-T65W)
Brett C. Thompson
    (ASB-6700-R81T)

**CORY WATSON, P.C.**
2131 Magnolia Avenue, Suite 200
Birmingham, AL 35205
(205) 328-2200
(205) 324-7896, fax
apittman@corywatson.com
ddellacio@corywatson.com
tpruett@corywatson.com
bthompson@corywatson.com