# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **KRISTINA WILLIAMS, individually and on behalf of similarly situated persons,** | ] ] ] ] | |
| **Plaintiff,** | ] ] | **2:22-cv-00177-ACA** |
| v. | ] ] ] | |
| **AMERASSIST A/R SOLUTIONS, INC.,** | ] ] ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION

After Plaintiff Kristina Williams went to a SmileDirectClub ("Smile Direct") for a consult about getting clear teeth aligners, Smile Direct charged her credit card for those aligners based on what Ms. Williams alleges is an invalid contract fraudulently filled out by a Smile Direct employee. After Ms. Williams refused to pay, Defendant AmerAssist A/R Solutions, Inc. ("AmerAssist") acquired the debt and began attempting to collect. Although AmerAssist was aware that Ms. Williams disputed the debt, it reported the debt to consumer reporting agencies as undisputed. It also repeatedly robo-called her despite her requests that it stop contacting her. Ms. Williams asserts that AmerAssist is liable for violating (1) the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* ("Count One"), (2) the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 ("Count

Two"), and (2) the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* ("Count Three"). (Doc. 22).

AmerAssist moves to dismiss Ms. Williams' amended complaint for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). (Doc. 23). Because Ms. Williams concedes her FCRA claim (doc. 29 at 12), the court **WILL GRANT** AmerAssist's motion to dismiss that claim and **WILL DISMISS** Count Three **WITH PREJUDICE**. But AmerAssist has offered no persuasive argument about why Counts One and Two fail, so the court **WILL DENY** AmerAssist's motion to dismiss Counts One and Two.

## I.   BACKGROUND

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012). The court may also consider documents a plaintiff attaches to a complaint. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . ."). "[W]hen exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern." *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019) (quotation marks omitted). But "[w]hen a complaint contains

specific, well-pleaded allegations that either do not appear in the attached exhibit or that contradict conclusory statements in the exhibit, [the court] credit[s] the allegations in the complaint." *Id.*

In this case, Ms. Williams attached various documents to her amended complaint, including the purported contract, an addendum to the contract, a police report, and some of AmerAssist's internal call logs. (Docs. 22-1 to 22-4). AmerAssist contends that this court must accept those documents and the statements made within them as true, even over Ms. Williams' allegations challenging the documents. (*See* doc. 23 at 9–10; doc. 30 at 3–5). But doing so would require this court to reject specific, well-pleaded allegations made in Ms. Williams' amended complaint. At the Rule 12(b)(6) stage, the court cannot do so. Accordingly, the court's description of the facts draws from the allegations in Ms. Williams' amended complaint, along with the attachments to her pleading, but where the two conflict, the court accepts Ms. Williams' specific, well-pleaded allegations.

In January 2020, Ms. Williams visited Smile Direct for a consultation about getting clear teeth aligners. (Doc. 22 at 3 ¶¶ 8–10). Although Ms. Williams had not decided whether to purchase aligners (*id.* at ¶ 11), Smile Direct employees presented Ms. Williams with a "retail installment contract," telling her that signing it did not incur any obligations and that the price terms were not final (*id.* at 3–4 ¶ 11). The first page of the document confirmed the Smile Direct employee's representation,

stating that Ms. Williams would "be sent an additional copy of [the] agreement along with an addendum authorizing your monthly payment from your specified account, after you order your aligners." (Doc. 22-1 at 4).

At the end of the appointment, Ms. Williams signed the "retail installment contract." (*Id.* at 3–4 ¶¶ 11–12). The first page of the document stated:

> Below is the Retail Installment Agreement along with the Terms and Conditions of financing your SmileDirectClub account. *Should and only if*, you elect to utilize our SmilePay™ payment plan when you order your aligners, you are hereby agreeing to the below terms, conditions, interest rates and fees. If you elect to pay in full at final checkout, you will not incur any finance charges and this agreement will have no binding effect.

(Doc. 22-1 at 4) (emphasis added). The retail installment contract set out the annual percentage rate, finance charge, amount financed, number of payments, and total sales price. (*Id.* at 5). Ms. Williams filled out the retail installment contract, initialing after clauses governing late fees and returned item fees and signing her name at the end of the contract. (*Id.* at 5–7). An undated attachment to the retail installment contract gives an option between "Single Pay" (a lower price for a one-time payment) or "SmilePay™" (a financing option). (Doc. 22-2 at 2). That executed document shows a check mark next to "Single Pay." (*Id.*).

Attached to the retail installment contract was a form in which Ms. Williams consented to receiving phone calls from "any dialing equipment (including a dialer, automatic telephone dialing system, and/or interactive voice recognition system)

4

and/or artificial or prerecorded voice or message." (Doc. 22-1 at 8). Ms. Williams' name (written in the same style as the name on the retail installment contract) appears at the bottom of the TCPA consent form. (*Id.*).

Ms. Williams never agreed to purchase the aligners. (Doc. 22 at 5 ¶ 14). Nevertheless, Smile Direct notified Ms. Williams the following day that her aligners were being made and that she had been billed $250 of the total amount owed. (*Id.* ¶ 15). Over the next few months, Ms. Williams repeatedly called and emailed Smile Direct, Healthcare Finance, and her credit card company to dispute the contract. (*Id.* at 5–7 ¶¶ 15–24). She also filed a police report alleging fraudulent use of her credit card. (Doc. 22 at 7 ¶ 26; doc. 22-3 at 2–3).

On September 22, 2020, AmerAssist, a debt collection company, acquired Ms. Williams' alleged debt.[1] (Doc. 22 at 7 ¶ 25; doc. 22-4 at 3). On September 28, 2020, Ms. Williams told an AmerAssist employee that the account was fraudulent. (*Id.*).

In February 2021, Ms. Williams found that her Experian credit report showed that AmerAssist had reported the Smile Direct debt. (Doc. 22 at 8 ¶ 27). On February 26, 2021, Ms. Williams disputed the debt with Experian. (*Id.* at 8 ¶ 28).

---

[1] Before Ms. Williams filed her amended complaint, AmerAssist answered the initial complaint, attaching to its answer various documents including a copy of the letter it sent to Ms. Williams on September 25, 2020. (Doc. 14-1 at 17). AmerAssist invites the court to consider the letter. (Doc. 23 at 5 ¶ 9). Such consideration would be improper in a Rule 12(b)(6) motion to dismiss, so the court declines that invitation. *See* Fed. R. Civ. P. 12(c).

On March 22, 2021, Ms. Williams called AmerAssist and again disputed that she owed any money. (Doc. 22-4 at 2). She also emailed a copy of the police report to AmerAssist. (Doc. 22 at 9 ¶ 32).

Between June 2020[2] and October 2021, AmerAssist called Ms. Williams at least four times, and each time she answered, a pre-recorded voice would put her on hold until she was connected to an operator. (Doc. 22 at 9 ¶ 33). Each time Ms. Williams spoke with anyone from AmerAssist, she told the other person to stop calling her and revoked her consent to being contacted in violation of the TCPA. (Doc. 22 at 9 ¶ 34).

Ms. Williams never received the aligners from Smile Direct or the copy of the agreement along with the addendum authorizing her monthly payment. (*Id.* at 4 ¶¶ 12–13). Ms. Williams alleges that AmerAssist's actions have "had a significant adverse impact on [her] credit rating and creditworthiness" and have caused her "inability to purchase a new vehicle in the fall of 2020 and experiencing a higher mortgage interest rate when trying to purchase a new home in January 2022." (Doc. 22 at 10 ¶ 39).

---

[2] The court notes that the timing of these phone calls is confusing. Ms. Williams alleges that AmerAssist began calling her in June 2020, several months before it acquired her alleged debt in September 2020. (*See* doc. 22 at 7 ¶ 25, 9 ¶ 33). However, the inconsistency does not affect the resolution of this motion.

## II.  DISCUSSION

The court must determine whether the second amended complaint "state[s] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.  A complaint need not contain detailed factual allegations, but it must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.

1. Count One (FDCPA)

In Count One, Ms. Williams alleges that AmerAssist violated the FDCPA by communicating to a credit reporting agency credit information it knew Ms. Williams disputed, constituting a false, deceptive, or misleading collection action under 15 U.S.C. § 1692e(8), and an unfair or unconscionable means of collecting a debt under 15 U.S.C. § 1692f.  (Doc. 22 at 14–16).

Section 1692e of the FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[c]ommunicating or threatening to communicate to any

person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." *Id*. § 1692f. AmerAssist moves to dismiss this claim on the grounds that: (1) Ms. Williams failed to allege damages; (2) Ms. Williams filed the claim outside the statute of limitations; and (3) AmerAssist has no obligation under the law to decide legal issues like the validity of a contract. (Doc. 23 at 17–22). Each argument fails.

AmerAssist's first argument is that Ms. Williams has not adequately alleged any damages. (Doc. 23 at 21). In support, AmerAssist cites *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), a case that addressed standing under the Fair Credit Reporting Act. (*Id.*). It is unclear whether AmerAssist means to challenge Ms. Williams' standing or her ability to obtain damages, but the court will address both possibilities.

First, Ms. Williams has standing because she alleges that AmerAssist's actions damaged her credit rating and creditworthiness, affected her ability to purchase a new car, and resulted in a higher mortgage interest rate when she tried to buy a home. (Doc. 22 at 10 ¶¶ 38–39). She also alleges that she spent time getting a police report and talking with AmerAssist employees in an attempt to resolve her dispute. (*Id.* at 7 ¶ 26, 9 ¶ 32, 9 ¶ 34; doc. 22-3; doc. 22-4). This is sufficient to

establish a concrete injury in fact for standing purposes. *See, e.g.*, *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279–80 (11th Cir. 2017) (finding that a plaintiff adequately alleged standing to bring a Fair Credit Reporting Act claim because she lost time attempting to resolve the credit inaccuracies and her credit score dropped as a result of the inaccuracies on her report).

Next, to the extent AmerAssist seeks dismissal of Ms. Williams' FDCPA claim on the ground that she has no actual damages, it provides no authority in support of that argument nor does it address Ms. Williams' specific allegations about the ways in which AmerAssist's actions harmed her.[3] (*See* doc. 23 at 21; *see also* doc. 22 at 10 ¶¶ 38–39). Moreover, even if Ms. Williams had not alleged harms that could result in an award of actual damages, the FDCPA expressly provides for statutory damages. 15 U.S.C. § 1692k(a)(2).

AmerAssist's second argument is that the FDCPA's statute of limitations bars Ms. Williams' claim. (Doc. 23 at 18–20). "A statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (alterations and quotations marks omitted). Accordingly, the court may dismiss a complaint as barred by the statute of limitations "only if it is apparent from

---

[3] In its reply brief, AmerAssist argues for the first time that Ms. Williams cannot recover any damages for her inability to buy a new car in the fall of 2020 because she fails to establish causation. (Doc. 30 at 9). The court will not address a causation argument raised for the first time in a reply brief. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005).

the face of the complaint that the claim is time-barred." *Karantsalis v. City of Miami Springs*, 17 F.4th 1316, 1319–20 (11th Cir. 2021) (quotation marks omitted).

The FDCPA provides for a one-year statute of limitations. 15 U.S.C. § 1692k(d). The claim accrues "on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered." *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019).

AmerAssist argues that Ms. Williams' FDCPA claim accrued on September 28, 2020, when Ms. Williams first told an AmerAssist that she disputed the debt, triggering AmerAssist's duty to report the debt as disputed. (Doc. 23 at 19). If September 28, 2020 is the accrual date, the statute of limitations would have run on September 28, 2021, over four months before Ms. Williams filed her complaint on February 9, 2022. *See* 15 U.S.C. § 1692k(d); (doc. 1).

AmerAssist may have a strong statute of limitations defense at the summary judgment stage, but the court cannot dismiss this claim at the pleading stage. Contrary to AmerAssist's interpretation of Ms. Williams' amended complaint, Ms. Williams' claim is that AmerAssist violated the FDCPA by reporting her debt to Experian and other consumer reporting agencies without indicating that she disputed the debt. (Doc. 22 at 15–16). Although the amended complaint clearly alleges that Ms. Williams told an AmerAssist employee on September 28, 2020 that she disputed the debt, the amended complaint contains no information about when

AmerAssist reported the debt to Experian or any other consumer reporting agency. (Doc. 22-4 at 3). AmerAssist faults Ms. Williams for this omission (doc. 23 at 19), but Ms. Williams is not required to negate AmerAssist's affirmative defense in her pleading, *see La Grasta*, 358 F.3d at 845. It is possible (albeit unlikely) that AmerAssist reported Ms. Williams' debt to Experian between February 9, 2021 (one year before Ms. Williams filed her complaint) and February 26, 2021 (when Ms. Williams filed a dispute with Experian), which would make Ms. Williams' claim timely. Because the face of the complaint does not establish AmerAssist's affirmative defense, the court will not grant the motion to dismiss Count One as barred by the statute of limitations.

AmerAssist's final argument is that Ms. Williams' claim depends on a finding that the retail installment contract is invalid, which is a legal determination debt collectors do not have to make. (Doc. 23 at 17, 20–21). While AmerAssist may be correct about debt collectors' obligations to adjudicate legal challenges to underlying debts, Ms. Williams' claim, as pleaded in her amended complaint, is that AmerAssist violated the FDCPA by reporting her debt to consumer reporting agencies without noting that she disputed the debt. (*See* doc. 22 at 15–16; *see also id.* at 16 ¶ 61, 16 ¶ 64 (alleging that AmerAssist failed to report the debt as disputed)). This is a claim that the FDCPA expressly permits. *See* 15 U.S.C. § 1692e(8) (prohibiting debt

11

collectors from failing "to communicate [to any person] that a disputed debt is disputed").

Because none of AmerAssist's arguments warrant dismissing Ms. Williams' FDCPA claim, the court **WILL DENY** the motion to dismiss Count One.

2. Count Two (TCPA)

In Count Two, Ms. Williams asserts that AmerAssist violated the TCPA by placing phone calls to her using an automatic telephone dialing system without her prior express consent. (Doc. 22 at 17–18).

The TCPA prohibits "any person" from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). AmerAssist argues that the court must dismiss this claim because Ms. Williams' pleading makes clear that she consented to receive the phone calls. (Doc. 23 at 9–10). Ms. Williams does not dispute that she initially consented to receive auto-dialed calls but contends that she revoked the consent each time she spoke with an AmerAssist employee. (Doc. 29 at 10–12). AmerAssist replies that because its internal call logs do not reflect any notes showing that Ms. Williams revoked her consent, the court must disregard the allegation in Ms. Williams' amended complaint that she did so. (Doc. 23 at 9–10; doc. 30 at 9–10).

AmerAssist's position is meritless. Although its internal call logs do not reflect any notes from an AmerAssist employee about Ms. Williams revoking her consent, Ms. Williams has expressly alleged that she did revoke her consent. (Doc. 22 at 9 ¶ 34). The court must accept that allegation. *See Gill*, 941 F.3d at 514. AmerAssist presents no other arguments about the merits of Ms. Williams' TCPA claim, so the court **WILL DENY** the motion to dismiss Count Two.[4]

### III.  CONCLUSION

The court **WILL GRANT** the motion to dismiss Count Three and **WILL DISMISS** Count Three **WITH PREJUDICE** but **WILL DENY** the motion to dismiss Counts One and Two.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this July 18, 2022.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

---

[4] AmerAssist does argue for the first time in its reply brief that if the court finds Ms. Williams states a TCPA claim, the court should dismiss the class claims. (Doc. 30 at 9–12). Because AmerAssist did not make this argument in its initial brief, the argument is not properly before the court. *See Herring*, 397 F.3d at 1343. AmerAssist may make this argument in opposition to a motion for class certification or at summary judgment.